**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>       v.<br><br>JONATHAN DARNEL (2),<br>JEAN MARSHALL (5),<br>JOAN BELL (9)<br><br>       Defendants. | Crim. A. Nos. 22-096-02, 05, -09 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 10, 2023)

Before the Court is Defendant Bell's [416] Motion to Exclude Evidence. Defendant Bell, joined by Defendants Darnel and Marshall (collectively, "Defendants") request that the Court exclude video evidence or testimony from Government witness Shampy Holler[1] demonstrating that: (1) Ms. Holler was in pain in the hallway outside of the Washington Surgi-Clinic ("Clinic") before gaining entry, and (2) Ms. Holler sought a later-term abortion on the day of the alleged conduct due to the purported non-viability of her pregnancy. Defendants argue that such evidence is not relevant and, in the alternative, that such evidence is substantially more prejudicial to Defendants than probative of any element in dispute. The Court disagrees and **DENIES** Defendant Bell's [416] Motion to Exclude Evidence.

As to Defendants' first argument, evidence is relevant if it has any tendency to make a factor more or less probable than it would be without the evidence, and the factual evidence is of consequence in determining the issue in dispute. Fed. R. Evid. 401(a). A relatively low bar, the key inquiry is to determine "what proposition is supposed to be relevant" and then whether a particular fact tends to support or disprove that proposition. *See United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993)

---

[1] Ms. Holler, a patient on the day of the alleged blockade at the Washington Surgi-Clinic, testified under this pseudonym in the prior trial.

1

(internal quotation marks omitted).  Among other things, here, the Government must show beyond a reasonable doubt that Defendants "intentionally injure[d], intimidate[d]" or "interfere[d]" with Ms. Holler, any other patient, or an employee of the Clinic, in the receipt or provision of abortion services. *See* 18 U.S.C. § 248(a)(1).  Generally, to "injure" someone means to do "[p]hysical damage to a person's body."  Black's Law Dictionary, "bodily injury" (5th Pocket Ed. 1996).  In the context of the charged statute, to "intimidate" someone means "to place [that] person in reasonable apprehension of bodily harm to him- or herself or to another." 18 U.S.C. § 248(e)(3).  If Ms. Holler collapsed onto the floor in pain as a result of the alleged blockade, that fact makes it more likely than not that Defendants, through their actions, "injured" and/or "intimidated" Ms. Holler and, thereby, patients and employees at the Clinic.  Therefore, evidence regarding a patient's or employee's physical or emotional response to Defendants' alleged conduct is relevant to elements in dispute.

The "why" and "what" of Ms. Holler's scheduled procedure are also relevant to issues in dispute.  In addition to showing injury, intimidation, or interference, the Government must demonstrate that Defendants used "force" or "physical obstruction.  18 U.S.C. § 248(a)(1).  Physical obstruction is conduct which "render[s] impassable ingress to or egress from" the Clinic or makes "passage to or from" the Clinic "unreasonably difficult or hazardous." *Id.* (e)(4).  In the last trial, Ms. Holler testified that she traveled from Ohio to the District of Columbia because she could not secure the termination of her pregnancy in Ohio due to state law, and further that the day of her appointment was the last of three days of preparation for the procedure.  Taking these assertions as true, it is more likely that she would have attempted entry than if, for example, she was in the fifth week of her pregnancy and lived in the District of Columbia.  In the latter hypothetical, it is more likely than not that an inconvenience, as opposed to obstruction within the meaning of the charged statute, might cause her to leave and return another day.  In Ms. Holler's telling, however, it is more likely than not that Defendants in fact obstructed Ms. Holler's entry because her medical circumstances made it more exigent for her to enter the Clinic.  So too for another patient who traveled from another state to the Clinic in the District of Columbia.

Having concluded that such evidence is relevant, the Court must determine whether the

"probative value [of the evidence at issue] is substantially outweighed by [the] danger of . . . unfair prejudice" to Defendants.  Fed. R. Evid. 403.  A risk of unfair prejudice means the risk of the jury returning a "decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (internal quotation marks omitted).  The Court further begins from the background principal that the Government is not required to "sanitize its case, to deflate its witnesses' testimony, or tell its story in a monotone" merely because there may be less prejudicial means to prove a fact at issue.  *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998).[2]  To this end, evidence of a victim's injuries, even where particularly gruesome or shocking, is regularly admissible in prosecutions of defendants who caused those injuries.  *See, e.g.*, *United States v. Rezaq*, 134 F.3d 1121, 1138 (D.C. Cir. 1998) (autopsy photos of shooting victim); *United States v. Clarke*, 767 F. Supp. 2d 12, 74 (D.D.C. 2011) (dismemberment of a body).  To be sure, "photographs of *gore* may inappropriately dispose a jury to exact retribution[,]" *Rezaq*, 134 F.3d at 1139 (emphasis added), but the extent of injury the Government intends to show is Ms. Holler slumped over in pain.  Such evidence carries no serious risk of prejudice.

The nature of Ms. Holler's pregnancy poses a somewhat closer question.  As the Court has repeated through the life of this case, because the topic of abortion can often present "an irreconcilable conflict between the interests of a pregnant woman who seeks an abortion and the interests in protecting fetal life," the termination of a pregnancy carries strong emotional responses for many.  *See Dobbs v.*

---

[2]  Prior to trial, in its [329] Order, the Court noted the Government's prerogative to generally prove its case through whatever means it chooses.  *Id.* at 5.  There, the Government indicated that it would not introduce any evidence regarding what reproductive health service any patient sought at the time of the charged conduct.  As a result, the Government requested that the Court preclude questioning into the topic on cross-examination.  Over Defendant Handy's opposition, ECF No. 259 at 22, joined by others, the Court granted that request based on the record before it at the time, mainly because, at that time, such questioning would be fairly beyond the scope of direct examination and would risk furthering Defendant Handy's efforts to place the propriety of abortion at issue.  As the case has proceeded through the first trial and now into the second trial, it is clear that the Government seeks to introduce a fairly substantial amount of evidence regarding the services sought and provided at the Clinic.  In response thereto, the Court's ruling *in limine* has necessarily shifted, just as many rulings *in limine* may change over the course of any trial.

3

*Jackson Women's Health Org.*, 142 S. Ct. 2228, 2304 (2022) (Kavanaugh, J., concurring).  As to Ms. Holler in particular, Defendants are quite right that an individual juror might feel some sympathy for Ms. Holler in light of her purportedly nonviable pregnancy.  In the face of potential prejudice, however, the Court must usually turn first to a limiting or curative instruction.  *See United States v. Tucker*, 12 F.4th 804, 826 (D.C. Cir. 2021).  After Ms. Holler's testimony, therefore, the Court will remind the jury that they may consider the nature of the abortion she allegedly sought on October 22, 2020 only in determining whether she was obstructed in attempting to receive abortion services that day, and for no other purposes.  The Court will again instruct the jury that this case is not about the propriety of abortion, or one form of abortion over another.  The Court is confident that the curative instruction will address any latent prejudice in Ms. Holler's description of her pregnancy and the services she sought on October 22, 2020.

Because the evidence Defendants seek to exclude is relevant and not particularly prejudicial, and for the foregoing reasons, it is hereby

**ORDERED**, that Defendant Bell's [416] Motion to Exclude Evidence is **DENIED**.

**SO ORDERED**.

Dated: September 10, 2023

                                                    /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge